**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PAOLO SILVESTRI,

     Plaintiff,

v.                             Case No.: 8:26-cv-1123

LA MUCCA BALLERINA LLC, and
MARSILIO ZAPPATERRENO,
individually,

     Defendants.

--------------------------------------------/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, PAOLO SILVESTRI, by and through undersigned counsel, files

this Complaint against Defendants, LA MUCCA BALLERINA LLC and

MARSILIO ZAPPATERRENO, and alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for unpaid minimum wages, unlawful tip credit practices,

tip misappropriation, and retaliation under the Fair Labor Standards Act,

29 U.S.C. § 201 et seq. ("FLSA"), and the Florida Minimum Wage Act,

Fla. Stat. § 448.109 et seq. ("FLMWA").

2.    Plaintiff Paolo Silvestri ("Plaintiff" or "Mr. Silvestri") worked as a server

for Defendants from approximately January 13, 2025, until his wrongful

termination on October 20, 2025.

1

3. During his employment, Defendants failed to pay Plaintiff any hourly wages for the first eight weeks of his employment, unlawfully retained and misappropriated his tips, maintained an invalid tip pool that included managers and owners, and ultimately terminated Plaintiff in retaliation for his complaints about Defendants' unlawful pay practices.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiff's claims arising under the FLSA, 29 U.S.C. § 201 et seq., pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under the FLMWA pursuant to 28 U.S.C. § 1367(a), as they arise from the same nucleus of operative facts as Plaintiff's federal claims.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Sarasota County, Florida, which is within this judicial district, and because Defendants conduct business in this District.

## THE PARTIES

7. Plaintiff Paolo Silvestri is an adult individual who resides in Sarasota County, Florida. At all times relevant hereto, Plaintiff was an employee of Defendants within the meaning of the FLSA and FLMWA.

8. Defendant La Mucca Ballerina LLC ("La Mucca" or the "Corporate Defendant") is a Florida limited liability company with its principal place

2

of business at 1668 Main Street, Sarasota, Florida 34236. La Mucca operates a restaurant known as "Mucca Ballerina Restaurant." At all times relevant hereto, La Mucca was Plaintiff's employer within the meaning of the FLSA and FLMWA.

9. Defendant Marsilio Zappaterreno ("Zappaterreno" or the "Individual Defendant") is an adult individual who, upon information and belief, resides in Sarasota County, Florida. Zappaterreno is the owner of La Mucca Ballerina LLC and at all times relevant hereto exercised operational control over Plaintiff's employment. Under the economic reality test applied in the Eleventh Circuit, see Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997), Zappaterreno is individually liable as an "employer" because he: (1) had the power to hire and fire employees, including Plaintiff; (2) supervised and controlled Plaintiff's work schedules and conditions of employment; (3) determined the rate and method of Plaintiff's payment, including wages and tip policies; and (4) maintained or had the authority to maintain employment records. Zappaterreno is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and is jointly and severally liable with the Corporate Defendant for the violations alleged herein.

## FLSA COVERAGE

10. At all times relevant hereto, Defendants were engaged in interstate commerce and/or in the production of goods for commerce within the

3

meaning of 29 U.S.C. § 203(s)(1)(A). Defendants operated a restaurant that purchased food products, beverages, and supplies from interstate vendors and distributors; processed customer payments through interstate credit card networks and payment processing systems; and utilized internet-based and electronic systems for business operations, all of which constitute engagement in interstate commerce.

11. Upon information and belief, Defendants' annual gross volume of sales or business has exceeded $500,000 during each relevant year.

12. At all times relevant hereto, Defendants were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

13. Alternatively, Plaintiff was individually engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 206(a), in that Plaintiff regularly handled food products, beverages, and supplies that had traveled in interstate commerce.

14. At all times relevant hereto, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e)(1) and Defendants were his "employer" within the meaning of 29 U.S.C. § 203(d).

## FACTUAL BACKGROUND

15. On or about January 13, 2025, Plaintiff began working as a full-time server at Defendants' restaurant, Mucca Ballerina Restaurant, located at 1668 Main Street, Sarasota, Florida 34236.

16. Throughout his employment, Plaintiff regularly worked double shifts consisting of both lunch and dinner service. In addition to his server duties, Plaintiff routinely performed bussing and running tasks.

17. Plaintiff typically worked approximately 40 or more hours per week. Over the course of his employment, Plaintiff worked an estimated 320 hours during Period 1 (January 13 through March 9, 2025) and approximately 914.5 documented hours during Period 2 (March 10 through October 20, 2025).

18. From the commencement of his employment on January 13, 2025, through approximately March 9, 2025—a period of approximately eight weeks—Defendants paid Plaintiff no hourly wages whatsoever.

19. During this period, Plaintiff worked full-time shifts and received only tips. Defendants provided no cash wages, despite being required under both federal and Florida law to pay at least the tipped minimum wage.

20. During the relevant period, the Florida tipped minimum wage was $9.98 per hour. Defendants paid $0.00 per hour.

21. Plaintiff's first paycheck was delivered one day late, on February 1, 2025. It was a handwritten check from Defendant Zappaterreno for $2,000, with no accompanying paystub.

22. When Plaintiff inquired about the shortfall, Zappaterreno's daughter Sara, who handled payroll, acknowledged that approximately $600 was missing and stated she would add the difference to the following check.

5

23. Plaintiff's second and third paychecks contained no hours listed on the paystubs, confirming that Defendants were not tracking or paying for Plaintiff's hours worked.

24. Beginning in approximately March 2025, after Plaintiff complained about unpaid wages, Defendants began paying Plaintiff $9.98 per hour (later $10.98 per hour after September 30, 2025), the Florida tipped minimum wage.

25. However, Defendants' claimed tip credit was invalid under federal law for multiple independent reasons:

a.) **No Written Tip Credit Notice:** Defendants never provided Plaintiff with the written notice required under 29 C.F.R. § 531.59(b), which must inform employees of: (i) the amount of the cash wage to be paid; (ii) the additional amount claimed as a tip credit; (iii) that the tip credit cannot exceed the amount of tips actually received; (iv) that all tips received are the property of the employee; and (v) that the tip credit will not apply unless the employee is informed of these provisions.

b.) **Managers and Owners in Tip Pool:** Throughout Plaintiff's employment, members of Defendant Zappaterreno's family—including Sara (who managed payroll), Aldo (Sara's husband), Silvia, and other family members—worked shifts at the restaurant and participated in the tip pool. Under 29 U.S.C. § 203(m)(2)(B), employers, managers, and supervisors are prohibited from receiving tips from a tip pool.

6

c.) **Phantom Tip-Outs:** Defendants required Plaintiff to tip-out a percentage of his tips for bussers even on shifts when no busser was working. When Plaintiff asked Sara about this practice, she confirmed it, stating: "Yes… if you don't like it, talk to my father."

d.) **Unilateral Changes to Tip-Out:** Defendants unilaterally increased the required tip-out from 20% to 30% without written notice or explanation.

e.) **No Tip Pool Transparency:** Defendants never provided employees with written or digital tip pool records, breakdowns, or POS reports explaining how pooled tips were calculated or distributed.

26. Because Defendants failed to comply with the tip credit requirements of the FLSA and its implementing regulations, Defendants were not entitled to claim a tip credit and were required to pay Plaintiff the full minimum wage—$13.00 per hour under Florida law (and $14.00 per hour after September 30, 2025)—for all hours worked.

27. Throughout Plaintiff's employment, Defendants systematically misappropriated Plaintiff's tips. The tips reflected on Plaintiff's paystubs consistently failed to match the tips recorded on his daily shift tickets.

28. Plaintiff retained his shift tickets throughout his employment and documented systematic shortages between tips earned and tips paid.

29. For example, in one pay period, Plaintiff earned approximately $1,700 in tips according to his shift tickets, but his payroll reflected only

7

approximately $1,100—a shortage of approximately $600 for that single pay period.

30. In early June 2025, Plaintiff and a co-worker, Alessandra, both noticed a significant shortfall of approximately $1,000 in their paychecks compared to their expected earnings from sales and tips. When they questioned Sara, she dismissively replied: "It's low season—what do you expect?"

31. Defendants' retention of Plaintiff's tips violates 29 U.S.C. § 203(m)(2)(B), which provides that tips are the property of the employee.

### Plaintiff's Protected Activity

32. In early June 2025, after discovering the significant shortfall in his paycheck, Plaintiff complained to Defendants about the pay discrepancies.

33. Plaintiff told Aldo (Sara's husband) that if Defendants did not correct the problem, he would have no choice but to contact the authorities.

34. Plaintiff's complaints were sufficiently specific to put Defendants on notice that he believed they were violating wage and hour laws, and his statement that he would "contact the authorities" constituted a threat to file a complaint with a government agency regarding FLSA violations.

35. Shortly thereafter, Sara confronted Plaintiff, upset, and accused him of "threatening to call the IRS."

36. Shortly after that, Defendant Zappaterreno called Plaintiff and stated: "I heard you told Sara you're calling the IRS. I'm not afraid if you do."

8

37. Plaintiff's complaints about unpaid wages and his stated intent to contact authorities constitute protected activity under the FLSA, 29 U.S.C. § 215(a)(3), and the FLMWA, Fla. Stat. § 448.104.

### *Defendants' Retaliatory Adverse Actions*

38. Following Plaintiff's protected activity, Defendants took a series of adverse employment actions against Plaintiff:

   a.) **July 13, 2025:** Defendants removed Plaintiff's lunch shifts and significantly reduced his hours. A busser was moved into Plaintiff's lunch server position.

   b.) **July 22 – August 9, 2025:** Defendant Zappaterreno's son, Marsilio Jr., was given a server position, further displacing Plaintiff.

   c.) **August 10, 2025:** Sara sent Plaintiff intimidating WhatsApp messages regarding a missed clock-out, stating that the rule decided by her and Defendant Zappaterreno was that if an employee forgets to clock out, they do not get paid for that day. She further threatened: "after two times they wouldn't even give you the payroll—they'd just fire you."

   d.) **September 2025:** Upon Plaintiff's return from a previously scheduled vacation, Defendants further reduced his schedule to only two days per week. When Plaintiff asked Sara if the reduced shifts were a mistake, she replied "NO," confirming the reduction was intentional.

   e.) **October 20, 2025:** Defendants terminated Plaintiff's employment. When Plaintiff texted Defendant Zappaterreno asking why he had not

received the weekly schedule, Zappaterreno replied: "No, I'm sorry, our adventure is over." When Plaintiff asked "Are you sure?" Zappaterreno responded: "Why do you say 'are you sure'? You sound threatening."

39. When Plaintiff asked Defendant Zappaterreno why his weekly schedule had been reduced, Zappaterreno stated: "Eh, you must have done something."

40. The temporal proximity between Plaintiff's protected activity in June 2025 and the commencement of adverse actions in July 2025 establishes a causal connection between Plaintiff's complaints and Defendants' retaliatory conduct.

41. Defendants' shifting and pretextual justifications for the adverse actions, combined with the hostile statements made by Defendant Zappaterreno and Sara following Plaintiff's complaints, further demonstrate that Defendants' actions were motivated by Plaintiff's protected activity.

### *Post-Termination Communications*

42. After his termination, Plaintiff continued to seek payment of his missing tips and final paycheck.

43. On November 2, 2025, Plaintiff wrote to Defendant Zappaterreno: "I worked five days (and without a busser). Why did I get paid only the tips from three days?"

44. Defendant Zappaterreno replied: "Come and we'll check. If it's wrong, we'll fix it." When Plaintiff stated he had already checked, Zappaterreno answered: "Then there are no errors if it's always like that."

45. Plaintiff informed Defendant Zappaterreno that he had retained all printed tickets and receipts from the year. When asked if he had tickets with tips that were not paid, Plaintiff answered yes, and provided an example: "For instance, $1,700 in tips, $1,100 on payroll—$600 missing."

46. On November 5, 2025, Plaintiff followed up asking if Defendant Zappaterreno had verified the discrepancy. Plaintiff received no response.

### *Pre-Suit Notice*

47. On December 5, 2025, Plaintiff, through counsel, sent Defendants written notice via Federal Express of his intent to initiate this action pursuant to Florida Statutes § 448.110(6)(a). A true and correct copy of the notice letter is attached hereto as Exhibit A and incorporated herein by reference.

48. More than fifteen (15) calendar days have elapsed since Defendants' receipt of the notice, and Defendants have failed to pay the total amount of unpaid wages or otherwise resolve the claim to Plaintiff's satisfaction.

**COUNT I**
**FAILURE TO PAY MINIMUM WAGE – FLSA**
**(29 U.S.C. § 206)**
(Against All Defendants)

49. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

50. The FLSA requires employers to pay employees at least the federal minimum wage for all hours worked. 29 U.S.C. § 206(a).

51. From January 13, 2025, through approximately March 9, 2025, Defendants paid Plaintiff no hourly wages for approximately 320 hours worked, in violation of 29 U.S.C. § 206. See Exhibit A.

52. Additionally, because Defendants failed to satisfy the requirements for claiming a tip credit under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, Defendants were required to pay Plaintiff the full minimum wage—$13.00 per hour under Florida law (and $14.00 per hour after September 30, 2025)—for all hours worked throughout his employment.

53. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a).

54. As a result of Defendants' violations, Plaintiff is entitled to recover his unpaid minim wages, an equal amount as liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY MINIMUM WAGE – FLMWA
### (Fla. Stat. § 448.110)

(Against Corporate Defendant)

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

12

56. The FLMWA requires employers to pay employees at least the Florida minimum wage for all hours worked. Fla. Stat. § 448.110.

57. During the relevant period, the Florida minimum wage was $13.00 per hour (and $14.00 per hour after September 30, 2025). The Florida tipped minimum wage was $9.98 per hour (and $10.98 per hour after September 30, 2025).

58. From January 13, 2025, through approximately March 9, 2025, Corporate Defendant paid Plaintiff no hourly wages for approximately 320 hours worked, in violation of Fla. Stat. § 448.110. See Exhibit A.

59. Additionally, because Corporate Defendant failed to satisfy the requirements for claiming a tip credit, Corporate Defendant was required to pay Plaintiff the full Florida minimum wage for all hours worked throughout his employment.

60. As a result of Corporate Defendant's violations, Plaintiff is entitled to recover his unpaid minimum wages, liquidated damages, and reasonable attorney's fees and costs pursuant to Fla. Stat. § 448.110.

**COUNT III**
**UNLAWFUL TIP CREDIT / TIP POOL – FLSA**
**(29 U.S.C. § 203(m))**
(Against All Defendants)

61. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

13

62.    Under 29 U.S.C. § 203(m), an employer may only claim a tip credit against minimum wage obligations if the employer satisfies certain statutory and regulatory requirements.

63.    Defendants failed to satisfy these requirements because, inter alia: (a) Defendants never provided Plaintiff with the written notice required by 29 C.F.R. § 531.59(b); (b) Defendants permitted managers and owners to participate in the tip pool in violation of 29 U.S.C. § 203(m)(2)(B); (c) Defendants required tip-outs for bussers even when no busser was working; and (d) Defendants unilaterally changed tip-out percentages without notice.

64.    Because Defendants failed to comply with the tip credit requirements, Defendants were not entitled to claim any tip credit and were required to pay Plaintiff the full minimum wage for all hours worked.

65.    As a result of Defendants' violations, and distinct from and non-duplicative of the zero-wage damages sought in Count I (which covers Period 1 only, January 13 through March 9, 2025), Plaintiff is entitled to recover the difference between the tipped minimum wage paid and the full minimum wage owed for all hours worked during Period 2, from approximately March 10, 2025, through the end of his employment on October 20, 2025, together with liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT IV**

14

**TIP MISAPPROPRIATION – FLSA**
**(29 U.S.C. § 203(m)(2)(B))**
(Against All Defendants)

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

67. Under 29 U.S.C. § 203(m)(2)(B), an employer may not keep tips received by its employees, whether or not the employer takes a tip credit.

68. Throughout Plaintiff's employment, Defendants systematically misappropriated Plaintiff's tips by: (a) paying Plaintiff less in tips than he earned according to his shift tickets; (b) retaining tip-out amounts for bussers even when no busser was working; and (c) permitting managers and owners to share in the tip pool.

69. As a result of Defendants' violations, Plaintiff is entitled to recover all misappropriated tips, estimated at $6,000 or more (see Exhibit A), liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b). Defendants' systematic retention of Plaintiff's tips further caused Plaintiff's total compensation—including wages and tips actually received—to fall below the applicable minimum wage in multiple workweeks, independently supporting a minimum wage violation under 29 U.S.C. § 206.

**COUNT V**
**RETALIATION – FLSA**
**(29 U.S.C. § 215(a)(3))**
(Against All Defendants)

15

70. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

71. The FLSA prohibits employers from discharging or discriminating against any employee because the employee has filed a complaint or instituted or caused to be instituted any proceeding under the FLSA, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3).

72. In June 2025, Plaintiff engaged in protected activity by making specific complaints to Defendants about unpaid wages and tip misappropriation, and by stating that he would contact the authorities if the problem was not corrected. Plaintiff's oral complaints were sufficiently detailed to put Defendants on notice that he believed they were violating the FLSA, and his threat to contact authorities constituted a threat to file a complaint with a government agency. See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011) (holding that oral complaints are protected activity under § 215(a)(3)).

73. Following Plaintiff's protected activity, Defendants took adverse employment actions against Plaintiff, including reducing his hours, removing his lunch shifts, subjecting him to intimidating communications, and ultimately terminating his employment.

74. Defendants' adverse actions were motivated by Plaintiff's protected activity, and Plaintiff's protected activity was the but-for cause of the

adverse employment actions within the meaning of University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013). The causal connection is established by: the close temporal proximity between Plaintiff's complaints in June 2025 and the commencement of adverse actions in July 2025; Defendants' hostile statements directly referencing Plaintiff's complaints (including Sara's accusation about "threatening to call the IRS" and Zappaterreno's statement that Plaintiff sounded "threatening" at termination); the pretextual and shifting nature of Defendants' justifications; and the escalating pattern of retaliation culminating in termination.

75. As a result of Defendants' retaliation, Plaintiff is entitled to recover all lost wages and benefits, compensatory damages, liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT VI**
**RETALIATION – FLMWA**
**(Fla. Stat. § 448.104)**
(Against Corporate Defendant)

76. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

77. The FLMWA prohibits employers from retaliating against any person for exercising any right protected under the Florida Minimum Wage Amendment. Fla. Stat. § 448.104.

78. Plaintiff exercised rights protected under the FLMWA by complaining to Corporate Defendant about minimum wage violations and threatening to report the violations to authorities.

79. Corporate Defendant retaliated against Plaintiff for exercising these protected rights by reducing his hours, subjecting him to hostile treatment, and terminating his employment.

80. As a result of Corporate Defendant's retaliation, Plaintiff is entitled to recover all damages available under the FLMWA, including back pay, front pay, compensatory damages, and reasonable attorney's fees and costs. Plaintiff suffered emotional distress, anxiety, and financial hardship as a direct result of Defendants' progressive retaliatory conduct, including the stress of having his work hours systematically reduced, being subjected to intimidating and threatening communications from management, and ultimately losing his livelihood through wrongful termination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a) All unpaid minimum wages owed to Plaintiff;

b) All tips unlawfully retained or misappropriated by Defendants;

c) An equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and Fla. Stat. § 448.110;

18

d) Back pay and front pay for Plaintiff's wrongful termination;

e) Compensatory damages for emotional distress and other harms caused by Defendants' retaliation, as available under the FLMWA;

f) Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and Fla. Stat. § 448.110;

g) Pre-judgment and post-judgment interest at the highest lawful rate;

h) Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

81. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated this 17th day of April, 2026

/s/ Frank M. Malatesta
FRANK M. MALATESTA, ESQ.
Florida Bar No. 00097080
MALATESTA LAW OFFICE
871 Venetia Bay Boulevard,
Suite 235
Venice, Florida 34285
Telephone: (941) 256-3812
Facsimile: (888) 501-3865
Frank@malatestalawoffice.com
Staff@malatestalawoffice.com
heather@malatestalawoffice.com
*Counsel for Plaintiff*